I think we're ready for the first case, Gomez-Heredia v. Sessions. May I proceed? Thank you. May it please the Court. My name is William Menard and I, along with Raymond LaHood, represent the petitioner in this case, Hoxland Gomez-Heredia. I have respectfully reserved one minute for rebuttal. The petitioner in this case has been a lawful permanent resident of the United States since 1997 and has a United States citizen wife and children born in this country. In 2015, the petitioner went on a vacation to visit his family in the Dominican Republic for 10 days and upon his return was deemed inadmissible to the United States for a 1999 conviction for possession of a small amount of marijuana and he was placed into removal proceedings. The Board of Immigration Appeals found the petitioner was ineligible for cancellation of removal because he committed an offense that rendered him inadmissible within the first seven years of his residence in the United States. There's no need for us to discuss the other conviction that was vacated, right? It's not relevant to this appeal anymore. No, Your Honor. So, Your Honors, the BIA's decision was erroneous and unreasonable for the following reason. Petitioner could only be rendered inadmissible if he were actually seeking admission into the United States. Why would that be so? I mean, there are a lot of provisions that say that certain kinds of people are inadmissible to the United States, right? Suppose someone who has been convicted of, I don't know what, terrorism abroad in some other country is living where he is in whatever country he lives. Is he not inadmissible to the United States? If that person were outside the United States, yes. But he's not looking to come to the United States. When he comes to the United States or if he tries to come openly to the United States, there would be a determination, perhaps, that he's inadmissible. But conceptually, isn't he inadmissible right now wherever he is? He can't be admitted to the United States. No, Your Honor. What we are arguing, and this is actually the crux of our case, is that there are two separate elements to the stop time provision in the INA. The first would be that the person has committed an offense that is described within the INA. The second would be that that offense— And that would stop time. It would stop the seven years. No. The seven years would stop upon the completion of the second prong of that requirement, which is that the commission of the offense renders the person inadmissible. So in the situation that you raised, the person outside the country would have committed an offense that is described within the INA but would only be deemed inadmissible upon seeking admission into the United States. But isn't inadmissible, the dictionary definition, not able to be admitted? Isn't that what the IBL means in that? Well, Your Honor, under Section 212 of the INA, that class of aliens are described as people who are seeking admission into the United States. That's how they are distinguished between those described in Section 237 of the INA who are deemed deportable. So the key distinction is those seeking admission and those who— Say requires an action by the government to assert the inadmissibility before that. That's when the stop-time provision kicks in, as opposed to the fact that when he commits the crime, he then has a status which could render him inadmissible should he leave or not. And that's also something that one could say is inadmissible, that he's inadmissible. So there's an ambiguity there. And the BIA has decided that question. Fifth Circuit has against you. And isn't that where we stand? Well, Your Honor, the BIA hasn't exactly ruled on the issue. And you're right. In the Kalix case, the Fifth Circuit did rule against us, although it is important to point out that they did not afford the BIA deference. They came up with their own conclusion there. The BIA hasn't ruled. I'm not sure the deference would have helped the undocumented person at the time. But anyway, what about just remanding this to BIA and get their ruling on this? Well, Your Honor, this Court has actually, while not ruling explicitly on this point, has expressly stated that there is a key difference between those persons who are in the class of persons who are deportable and those who are in the class of persons who are inadmissible. In Reyes v. Holder in 2013, this case reviewed the instance of a noncitizen who had come to the United States without lawful admission. And the court— Arrera did away with the distinction between inadmissibility and deportability. No, Your Honor. The provisions of the INA under Section 212 for inadmissibility and Section 237 with respect to deportability still stand. All Arrera did was say that a lawful permanent resident who leaves and comes back could be considered to be seeking admission, but that would only be if they had under six delineated categories and at the time that they came into the United States. So the key here is not the petitioner's commission of the offense in 1999, but rather the date that he came back and sought admission into the United States. How does that—could you help me out with the BIA's decision in Heredo Delgado, which the government relies on? Because in that case, the lawful permanent resident alien had been convicted of theft in 1991, state fault statements in 1992, later crimes of moral turpitude that became the basis for the notice to appear. And the BIA appears to have said, we conclude that you don't have to be actually charged and found inadmissible or removable in order for the stop time provision to kick in. Or am I misunderstanding that? Well, it is my understanding that Heredo Delgado simply stated, and this is what Kalix found, simply stated that you could be found removable on one ground and ineligible for cancellation of removal on another ground. Kalix said that that was not enough to decide this particular issue and then reached its own conclusion. Well, but that was—that may have been the narrow holding of the BIA in Heredo, but its reasoning would apply equally to this situation, wouldn't it? The reason why they said you could be found removable on one ground and have the stop time apply in the other is the same reasoning that would apply here, would it not? And the same reasoning that the Fifth Circuit used in Kalix. Well, to the extent that it would, I respectfully state that this Court has ruled otherwise. In Reyes v. Holder, this Court, in examining cancellation of removal and the stop time rule, stated that the Petitioner in that case could not be deemed deportable because he was never actually admitted into the United States. So the Court made clear that the issue is not simply the commission of the offense, but the actual admission status of the individual. In other words, a noncitizen who has never been admitted into the United States cannot be deemed deportable. We are simply asking that the Court make the next logical step in that analysis, and essentially the reverse, that a person who has been admitted into the United States cannot be deemed inadmissible unless they leave and come back into the United States. If a lawyer advising someone in Mr. Gomez's situation about whether to leave the United States and what might happen to him, wouldn't the best advice be don't go? Well, I shouldn't say Mr. Gomez's situation. Let's make it indisputable. Someone who has committed an offense that would render him inadmissible. Wouldn't the advice be no, don't go, because when you come back, you will be put into removal proceedings because you are inadmissible to the United States in that situation? Your Honor, I see that my time is ending. Okay. Yes, that would be the advice, but that doesn't really solve the issue here. The issue here is not whether he was inadmissible in 2015. The issue is what's the date that we use here. The date for the 2009 or whatever date it was, the earlier conviction. The earlier conviction, right. All we are saying here is that the operative date that the time should stop for continuous presence is the date that he becomes inadmissible. Is inadmissible in fact. That is correct. He's being stopped. Right. And the reason that he is not admitted is what you're describing, not the date that he became a person who could not be admitted anymore to the United States. Right. It would become the date that it would be the date that he could be determined inadmissible. And there's a reason that Immigration and Customs Enforcement didn't charge him as removable in 1999 after the first conviction, and that's because they couldn't. While he was here, they couldn't charge him as inadmissible to the United States. They could only do so when he left and came back. And so that should be the operative date of when his continuous residence in the United States stopped. Thank you. May it please the Court. Victoria Braga, appearing on behalf of the Attorney General. The Court should deny the petition for review. As the agency found, the petitioners' 1999 and 2010 controlled substances convictions subjected him to treatment as an arriving alien upon his return to the United States from the Dominican Republic. 2010 is out of the case now, isn't it? I mean, it was vacated, and that's – and the arguments about failing to grant a continuance are moved. And we're really talking about the stop-time provision, aren't we? And the Flutie doctrine is also off to the side. Your adversary didn't even raise it. Yeah, the petition – So let's focus on the one that – because that's the real issue here, it seems to me. Stop-time question. Yes, so our argument – What's wrong with his position that inadmissibility is determined when he actually is determined to be inadmissible? Well, under precedent of the Board, as well as this Court and other circuit courts you mentioned before the Fifth Circuit, an alien does become inadmissible at the time that they commit the qualifying offense. Do we have a precedential opinion of the BIA to that effect? Matter of Gerardo Delgado, which was decided in 2006, the Board explained that for purposes of cancellation stop-time rule, an alien was rendered inadmissible by the commission of an offense if he could be or become inadmissible for the commission of the offense. So in saying that, the Board is contemplating that he may not at that time be seeking admission but might later be seeking an admission and would be inadmissible at that time. The Fifth Circuit, which did cite Matter of Gerardo Delgado, has extensively analyzed the issue and, as you pointed out, did decide against the petitioner in that case and would have decided against the petitioner here in that, in that case, they were considering a petitioner who was not even seeking admission to the United States and they were just asking whether such a person could be rendered inadmissible by the commission of an offense and they did decide that the person was rendered inadmissible on the date that he had committed the offense. So, Gerardo Delgado, was the argument made that your adversary has made in that case that it should be determined as of the time of entry as opposed to when the conviction occurred? Or did they just, was this just something that they just said without much analysis and argument on the point? Well, I think the issue in Gerardo Delgado that the alien was raising is that he was being rendered inadmissible or deportable because of an offense that was not charged as the basis of his removal and in analyzing whether... Was it not a stop time case? The question was whether an offense that did not, that an alien was not being charged as removable based on that offense could be used to stop time. So they were answering the question about the stop time rule and they did answer the question affirmatively saying that even though an alien is not charged as deportable or removable because of the offense that he committed, the offense could still stop his time. And extending that analysis here, it would stand that the date of commission of the offense would be the date that the time stopped even though the alien was not seeking entry at that point. This court has also said in Tably v. Gonzalez that... Excuse me, that was an issue that the BIA had to address in Gerardo Delgado in order to get where it was going on the issue that was presented, right? That is to say, they had to determine the stop time issue that is at issue here even though they were addressing it in a different context. Yes, they were addressing it in a different context, but they were deciding when the stop time rule needed to apply. So the question was phrased to the BIA differently than it is here because in that case they were talking about how he was charged and because he was not charged as removable because of the offense that was stopping time, the BIA had to say that the offense when he committed it, even though he was not charged as inadmissible or removable on that basis, could still stop his time. And that offense was the theft conviction or the fault statements conviction, if you know? These are the 1991 and 92 convictions. I think it was... I'm sorry. I don't know which conviction. I guess what I'm saying, did they necessarily decide the question that's before us now? They were focusing on a conviction that rendered him inadmissible, not deportable. I'm not sure, and I don't know that there would be a distinction because the terms of the stop time rule, the time is stopped when the alien commits an offense that renders him either inadmissible or deportable. So even if the offense that they had been discussing there had rendered him deportable, it was just about the time. You still have to figure out when the time stopped. When the time stopped, correct. This circuit has also addressed the issue in Tably v. Gonzalez. It's a 2006 case. And in that case, although the stop time rule was not directly at issue as it is in this case, it more dealt with applying the stop time rule retroactively. The court did say that residence is stopped on the date that an alien commits a qualifying offense. So this court does have precedent indicating, as the Board has and as the Fifth Circuit has, that the date on which an alien commits offense is the date on which his presence is stopped. Are you familiar with the case of Reyes v. Holder that Mr. LaHood mentioned in his argument? I am not familiar with the facts of that case. Because he argued that we have a precedent that already goes the other way, but I noticed that that is not a case that is cited in either his brief or yours. It would be understandable if you were unfamiliar with it, but I wondered if you had any response to what he had to say. From what I can remember from his argument, it sounded like that case was addressing the difference or the distinction between inadmissibility and deportability, which, as I just said, for the purposes of the stop time rule would not be relevant because the stop time rule is not drawing a distinction between inadmissibility or deportability. The stop time rule applies when someone commits an offense that renders him inadmissible or deportable. Or deportable on certain grounds, yes. In the Immigration Act, there are still grounds of inadmissibility, which are applied normally to people outside the country and then in certain instances to people inside the country, and then grounds of deportability, which are applied to people inside the country. So the stop time rule simply references both classes of people and both types of offenses, but it doesn't draw a distinction as it seemed that the court was discussing in the Reyes case. Because the petitioner's time was halted in 1999, which was only two years after he had entered the United States as a lawful permanent resident, he would not have acquired the requisite seven years of continuous presence to qualify for cancellation of removal, and the board would therefore be correct to not reopen his proceedings to allow him to seek that type of relief. So with that, if there are no further questions, we would urge the court to deny the petition for review. Thank you. Your Honor, two quick points on rebuttal. First, the BIA not only was Matter of Geraldo Delgado not directly on point as stated in Kalix, but the BIA in an unpublished decision in Matter of Laura Terrazas ruled exactly in favor of R. Right, but of course in an unpublished decision is not something we have to give deference to. In Geraldo, what the board said is that when Congress uses is deportable or is inadmissible, that typically references a determination of such, but that here they use the word render, and the board said Congress used the word renders in this section. We must assume it intended a different meaning by the use of that word. We find that the phrase renders the alien inadmissible or removable requires only that an alien be or become inadmissible or removable, that is, be potentially removable if so charged. Consequently, we conclude that an alien need not actually be charged and found inadmissible or removable on the applicable ground in order for the criminal conduct to terminate continuous residence. That's what they say in a precedential opinion to which we owe deference. So why would we, is that, that's not dictum in that case, is it? Your Honor, may I finish the, thank you. Your Honors, I, the petitioner argues that that direct, you do not owe deference because that directly conflicts with this court's ruling in Reyes v. Holder. There the court was reviewing the case. Am I right that Reyes is not cited in your brief? Yes, Your Honor. It might be nice for you to tell us the citation so that we could find it. Absolutely. The citation is 714 F. 3rd 731 from 2013 in this court. And in that case, the court reviewed the instance of a noncitizen who'd come to the U.S. without lawful admission. Ten years after a conviction in New York for misdemeanor menacing, the government put him into removal proceedings saying that he was present in the U.S. without status or lawful admission. The BIA ruled that his conviction rendered him deportable under Section 237 in the INA. This court disagreed, stating that the petitioner could not be deemed deportable because he was never actually admitted into the United States. Yes. So the, the, the logical extension of that is that there are two classes of, of noncitizens. There are those who have been admitted and that there are those who are not admitted. And you cannot be more than one at the same time. I, I understand that. I mean, it, it means that he is not deportable, right? It doesn't mean he's not inadmissible, particularly if the issue is not, is he inadmissible, something that might be adjudicated at the time of a seeking admission, but has he been rendered inadmissible by a crime that he's committed? That's what this statute is about. Reyes is not concerned with that. Yeah, there's a distinction between people who are deportable and people who are inadmissible. And let's assume that Reyes says that someone who is inadmissible, has been rendered inadmissible by something he's done, is not necessarily thereby rendered deportable. But I don't see what that has to do with the issue before us, which is the timing of the stop time rule, which is not an issue in Reyes. Right. But the issue in Reyes was the definition of the terms inadmissible and deportable for purposes of cancellation of removal. And that's what we have. Is that not, are those not provisions that use the phrase is removable, is inadmissible, which is exactly what the BIA is distinguishing in Verrata? Well, Your Honor, but the difference between renders him inadmissible and is inadmissible, we don't see any difference between those two. Well, you don't see any difference, but the BIA does see a difference. You're saying then that we ought not defer to Jurado Delgado, not because it's inapplicable here, but because it's wrong, which is a perfectly reasonable argument, I suppose. Yes, well, we are not just because it's wrong, although it is, but because it, this Court's reasoning in Reyes applies equally well. The reason that, once again, the reason that the Petitioner was not charged as inadmissible in 1999 and put into removal proceedings was because he wasn't inadmissible at that time. No. It's because he wasn't seeking admission, and so there was no occasion to decide, for any official to decide that he was inadmissible. Correct. But what that essentially means. So from that moment on, he is inadmissible. If he ever leaves and tries to come back, he will be adjudicated inadmissible, right? Because he was rendered inadmissible by the crime he committed. But he would be deemed inadmissible at the time that he sought to come in. He would be found inadmissible at the time he sought to come in, and so they would say, you may not be admitted. We will not admit you because you are inadmissible. In fact, you've been inadmissible for years. It's just we never had occasion to deal with it because you weren't trying to be admitted. But what that would essentially do is create a situation where a lawful permanent resident who is legally allowed to travel freely would basically be kept within the United States. That's what the overruling of the Flutie doctrine does. It puts such a person in that position. Correct. But then the issue is when that person is deemed inadmissible. So essentially, he is someone who would be eligible for citizenship because this is not an offense that would render him unable to apply for citizenship, but he would be unable to travel as a permanent resident. It creates an extremely unusual— It's a good incentive to become a citizen. Yes, it does. But it's also unreasonable to hold someone hostage here for 20, 30, 50 years for a small— possession of a small amount of marijuana charge. But now help me out on this. That's—why would that not happen just by the overruling of the Flutie doctrine? Because someone could otherwise acquire sufficient time in the United States that even though he would be seeking admission, he would be then admissible? Is that the idea, if he has not been—had his continuous residence time in place? Correct. He would be eligible. And that's exactly what we're asking this court to do is simply remand the case ultimately to the immigration judge who never actually made a ruling on this particular issue and sidestepped it. Has the IJ determined he was not eligible for cancellation because the time stopped or the BIA determined not eligible for determination because the time stopped at the time of the commission of the offense and not when he was presented for admission? The immigration judge never made that decision. The BIA did. The BIA did, correct. So all we are asking is that you remand so that he can proceed with an application for cancellation removal. We are not asking to ignore his 1999 offense or—and that will be taken into due consideration when he applies for cancellation removal. We are simply— You're just talking about the discretionary aspect of it. Right. That would go into the— That would go into the calculus of whether or not— Absolutely. Of course, the court knows full well about the 1999 conviction. And you've noted that the Fifth Circuit did not consider Gerardo Degado to cover or to narrow— to decide the question before them. Why is it not presidential here apart from whatever the Fifth Circuit said? Why does the reasoning of Gerardo Degado not mean that we have to decide the question whether we owe deference to that analysis? Well, Your Honors, well, first of all, the sole issue in Gerardo Degado was whether someone could be removable on one ground and ineligible for cancellation of removal on another ground. They didn't—the issue before the court and what was properly argued before the court was simply that issue and not the argument that we are making. So the court didn't actually hear our particular argument. And furthermore, as seen in Reyes, and I do keep going back to that case, the logic cited in Reyes is much more in line with the logic that follows our argument. Thank you both. Very well argued. The next time you might give the citation to a case that's not in your brief to your opposing counsel, it will help us in our job. We'll get better argument on that case. And you can also notify the court in advance if you're relying on a principal case that is not cited in your briefing. I apologize, Your Honor. I will. Thank you both. Very well argued.